WINDOW ROCK DISTRICT COURT

September 16, 1982

No. WR-CV-197-82

OPINION AND ORDER

FAYE APACHE, and JUDY GLANZER,
Administratrix for the
ESTATE OF BOYD APACHE, Plaintiffs, v.

REPUBLIC NATIONAL LIFE INSURANCE COMPANY
and REBECCA JANE APACHE, Defendants.

Honorable Tom Tso, Judge presiding.

It often happens that cases which pose a simple legal question to be answered by the court are not as simple as they seem. This is one of those cases.

The situation itself is rather simple. Boyd Apache and Rebecca Jane Jim were married on July 2, 1977 in Phoenix, Arizona, and at one point Mr. Apache named his wife as the beneficiary to his group life insurance policy with the Republic National Life Insurance Company. The policy is one which the employees of the Navajo Nation have as a part of their employment, and as it was with most tribal employees, Mr. Apache designated his wife as the beneficiary of the policy.

The couple separated, and in October of 1981 the wife obtained a default divorce. One problem with default divorces is that spouses who are anxious to sever their ties with each other are often negligent about making arrangements for all their property interests in a divorce decree. That was the situation here, and neither Mr. or Mrs. Apache thought to settle who the beneficiary to the insurance policy would be. Mr. Apache did not think of changing the beneficiary to his group life policy, and he died in an auto crash about a month after the divorce without doing so.

The dispute here is between the former spouse, who is named as the beneficiary of the insurance proceeds, and the mother and sister of the decedent. This court has already ruled that the former wife lost any interest in the insurance proceeds because of the divorce, and she now asks the court to reconsider that ruling.

All the parties ask the simple legal question: "Does a spouse named as an insurance beneficiary lose the right to insurance due to a divorce?"

The former wife urges the court to say "no," relying upon Arizona law and the principle that insurance policies are contract matters in which the terms of the contract must be enforced.

The mother and sister-administratrix say "yes," urging the court to find an insurable interest had been terminated and to find that under Navajo customary law a divorce severs all rights of the former spouse.

The parties have presented several legal issues in their briefs (and very well), and the court finds a procedural barrier it must pass over before reaching the reasoning required to answer the question posed. The legal barrier is that of whether or not the court is required to apply apparently dispositive Arizona state law. Then the legal alternatives which appear to be available are:

1. Applying the flat rule of Arizona that the policy designation is valid;

2. Finding there is no insurable interest such as to make the beneficiary designation valid;

3. Finding a termination of the interest of the former wife in the policy; or

4. Declaring a Navajo customary law which terminates a former spouse's interest.

## THE CHOICE OF LAW IN THIS CASE

The decendent was a resident of the Arizona portion of the Navajo Nation, and the former spouse says that the court is required to apply Arizona law which is favorable to the position she takes. This court is required to apply any federal law or Navajo laws or customs of the Navajo Nation which may be applicable to a particular civil action. 7 NTC Sec. 204(a). If the court finds there are no applicable Navajo statutory or customary laws or if it finds there is no applicable federal law, then it must apply the law of the state where the dispute arises. 7 NTC Sec. 204(c). Therefore the choice of law question is resolved if there is any applicable Navajo or federal law. The court finds that there is no applicable federal law or Navajo statutory law with regard to the legal question here, but that there is Navajo customary law which may be applied.

## NAVAJO CUSTOMARY LAW

Paragraph IV of the mother and sister's petition for an injunction raises the legal question of custom in this way:

> "That by Navajo tradition, Rebecca Apache upon divorce to Boyd Apache relinquished all rights and title to his property, and upon the final decree of divorce as a single unmarried person having no claim or right to the estate or insurance of Boyd Apache."

This allegation adequately and properly put the opposing parties on notice that Navajo custom would be relied upon as applicable law. The former spouse complains that at the time of the final hearing in this case there was no evidence on what the custom is, although there was argument about it. She also says that there was no advice by "counsellors familiar with . . . customs and usages," as provided for by 7 NTC Sec. 204(b).

It is only where there is a doubt regarding the custom or usuage that the court need avail itself of experts in Navajo culture, and the statute permits the court to take judicial notice of Navajo traditional law. It is clear that a judge not only may, but must take

judicial notice of local law. McCormick's Handbook of the Law of Evidence, Sec. 335 (2nd. Ed. 1972). If one argues that custom and tradition are matters of factual evidence and not reading the law as it is printed, it is clear that this court can take judicial notice of customs as adjudicative facts. R. 5, Rules of Evidence. Thus, if the custom is generally known within the community, or it can be found by resort to accurate sources, it is proven. In the Navajo context, the comment by a dean of one law school that "Judicial notice may only be taken of those facts every damn fool knows" is appropriate. McCormick, supra, p. 761, f.25.

Whether or not Navajo custom will decide this case depends upon whether the court can take judicial notice of Navajo marriage and divorce customs "every damn fool knows."

By Navajo tradition, at the time of marriage the husband will normally move in with the wife's clan. Traditionally the father and any children live with the mother's family, and children are said to "belong" to the mother's clan. Kluckhon and Leighton, The Navaho, 100 (Rev. Ed. 1974). When there is a divorce and the couple is living with the wife's family, the husband simply returns to his own mother's unit. Witherspoon, Navaho Kinship and Marriage, 75 (1975). If the divorce takes place at the residence area of the husband, then the wife and children go to her mother's unit and the husband remains. Id. at 76. As to dividing property, the couple keep what was theirs before marriage and the wife keeps the remainder. One researcher summed up the procedure this way:

> "Among the people who follow the old laws, the divorce procedure is very simple; the man merely states as he walks out of the hogan: "Tse-hah-maz (Stone Rolls Out.") He takes with him all the goods that were his before marriage. Any property accumulated during the union remains with his wife." Van Valkenburgh, "Navajo Common Law 1," 9 Museum Notes 17, 22 (1936).

Another method of divorce was counselling by the wife's father and, when it appeared there could be no reconciliation, the couple would "split the blanket," dividing equally the goods they acquired during the marriage. Therefore it would appear that in the absence of an agreement, the wife would take all.

Navajo customs cannot be applied in a vacuum, and they must be applied with logic in accordance with present circumstances. It is not correct to say that Navajo custom cannot be applied to situations such as this, where there are contracts binding commercial entities from the outside that don't understand local situations. That is nonsense, because Navajo custom and tradition is as much the law of the Navajo Nation as a tribal council resolution or a statute in the Navajo Tribal Code. Contracts of insurance are made subject to the local law of contract or insurance, and that local law determines the validity and construction of the contract. 43 Am.Jur.2d, Insurance Sec. 29.

Applying these principles of Navajo custom, we can find that there is a custom of finally terminating a marriage by someone moving, the woman keeping the property when the move is made or the couple

making an equal division of marital property before going their own ways. The principle of finality requires that the court say there is an event which cuts the ties of the parties, and the event here is the divorce.

Under Navajo custom the woman can simply keep the property of the marriage and send the man to his own family, taking only his own property acquired before the marriage. She also has the option of working out an arrangement with the man. In modern times, the woman has the further choice of coming into a court using Anglo-European ways, and that is what happened here. The woman left the man and filed a divorce acting against him. Importantly, she had the option of demanding a property settlement but the decree only provides for child support. She therefore left the decedent with his remaining property.

The life insurance policy Navajo tribal employees have is not whole life insurance in which a cash value builds - it is an ordinary life policy which provides coverage only so long as the premiums are paid. Ownership rights to the proceeds of the policy are not absolute and can change at the will of the policyholder. See Harris v. Harris, 493 P.2d 407, 408 (N.M. 1972). Therefore the former wife has no right to the policy proceeds as such. Because Navajo customs show us that there was finality to custom divorces (forbidden here since 1940; 9 NTC Sec. 407) and since the former wife left the husband, leaving property behind her, this court must hold that as a matter of Navajo customary law she surrendered any further right in the policy.

It has been said that in addition to the fact of divorce a former wife may lose her interest as a beneficiary under an insurance policy by an agreement of the parties which can be construed as a relinquishment of the spouse's rights to the insurance. 44 Am.Jur.2d, Insurance Sec. 1740. For the purpose of Navajo customary law this court must hold that leaving a spouse is just such a relinquishment of rights. If the woman has no further interest in the man, then she should have no interest in his life. "(T)he belief that the beneficiary of life insurance should have an interest in the insured's continued life, is very ancient and still persists." New England Mut. Life Ins. Co. v. Spence, 104 F.2d 665, 667 (2nd Cir. 1939). It is common principle of law that the agreement of the parties can be construed by their actions. Here there was a desertion and a divorce in which no property was claimed, leaving the clear inference the former wife was satisfied with the property division. This conduct is, of itself, sufficient to show her agreement that she would give up any future rights to the former husband's property.

CONCLUSION

The general American legal principle appears to be that a former wife named as a beneficiary in an insurance policy is entitled to its proceeds. There was formerly a Texas rule that the woman lost an insurable interest in the man's life (i.e. a valid interest in there being insurance on him to which she is the beneficiary) upon divorce. This court of course does not rely upon insurance law but upon the clear effect of divorce by Navajo custom in holding contrary to the general American rule. This is perfectly proper and not offensive to any sense of Anglo-European justice. New England Mut. Life Ins. Co., above, p.

■■■■■■■

667. There was a principle of finality in Navajo customary divorce, and the principle of restoring harmony in the community by quickly and finally breaking ties so the community can soon return to normal is one which is common-sense. To permit a former spouse to keep such ties that she or he may be said to be lurking behind the hogan waiting to take a portion of the corn harvest is unthinkable, since each spouse returns to his or her own family after the divorce. Each former spouse should return home after making the break and disturb others no more.

Therefore the motion to reconsider the judgment of July 13, 1982 is hereby DENIED.